# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **ED CV 21-739-JFW(KKx)** | Date: July 7, 2021 |
| Title: | Gary Ogaz -v- Honeywell International, Inc., et al. | |

**PRESENT:**

        **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| Courtroom Deputy | Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**      ORDER DENYING MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447 [filed 5/26/21; Docket No. 20]

On May 26, 2021, Plaintiff Gary Ogaz ("Plaintiff") filed a Motion to Remand Pursuant to 28 U.S.C. § 1447 ("Motion"). On June 7, 2021, Defendants Honeywell International, Inc. ("Honeywell") and Intelligrated, LLC ("Intelligrated") (collectively, "Defendants") filed their Opposition. On June 14, 2021, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's June 28, 2021 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

On December 16, 2020, Plaintiff filed a Complaint against Defendants in San Bernardino Superior Court, alleging causes of action for: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California Business & Professions Code §§ 17200, *et seq.* Plaintiff was an hourly, non-exempt employee of Defendants from approximately August 2018 to approximately February 2020.

On April 26, 2021, Defendants removed this action, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA") and, alternatively, that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).[1]

## II. Legal Standard

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by Congress and the Constitution. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Federal subject matter jurisdiction may be based on diversity of citizenship pursuant to CAFA. *See* 28 U.S.C. § 1332(d)(2). The party seeking federal subject matter jurisdiction under CAFA must show that at least one plaintiff and one defendant are citizens of different states, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. *Id.* "[T]he burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Fritsch v. Swift Transp. Co. of Ariz., LLC,* 899 F.3d 785, 788 (9th Cir. 2018) (*quoting Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014)). However, "[i]f the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.* at 788-89 (*quoting Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type-evidence related to the amount in controversy at the time of removal.'" *Id.* at 793 (*quoting Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra,* 775 F.3d at 1197. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." *Id.* at 1199.

A plaintiff may contest a removal in either a facial or factual attack. *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [jurisdictional] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (*quoting Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A factual attack, by contrast, 'contests the truth of the [jurisdictional] allegations, usually by introducing evidence outside of the pleadings.'" *Id.* (*quoting Leite*, 749 F.3d at 1121). However, outside evidence is not necessary; a

---

[1] Defendants also removed Plaintiff's PAGA action, *Gary Ogaz v. Honeywell International, Inc., et al.*, Case No. ED CV 21-739-JFW (KKx) ("*Ogaz II*"), from San Bernardino Superior Court.

factual attack can also rest on a plaintiff's "reasoned argument" challenging "the truth of the defendant's jurisdictional allegations" and explaining why those assumptions are not "supported by evidence." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020)

## III. Discussion

In his Motion, Plaintiff argues that Defendants failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 necessary for CAFA jurisdiction.[2] Plaintiff also argues that Defendants failed to prove by a preponderance of the evidence that the amount in controversy with respect to Plaintiff's individual claims exceeds $75,000 necessary for diversity jurisdiction.[3] In their Opposition, Defendants argue that the evidence demonstrates that the amount in controversy is satisfied for both CAFA and diversity jurisdiction.

### A. Defendants Have Demonstrated the Amount in Controversy Exceeds $5,000,000

#### 1. Defendants' Estimated Amount in Controversy

Because Plaintiff's Complaint does not specify the amount in controversy, Defendants estimated the amount in controversy in their Notice of Removal after calculating that there were approximately 3,748 putative class members. Specifically, in their Notice of Removal, Defendants estimated that the amount in controversy for Plaintiff's claim for unpaid overtime was $132,919,072, based Defendants' assumption that each class member worked an average of five unpaid hours of overtime at the rate of one and one half their regular rate per week (*i.e.*, one hour of overtime per shift) and one hour of unpaid overtime at double their regular rate per week. Defendants estimated that the amount in controversy for Plaintiff's meal breaks claim was $10,934,459.80, based Defendants' assumption that each class member failed to receive at least

---

[2] Plaintiff argues that this action is exempt from CAFA even if the amount in controversy is met because more than two-thirds of the putative class members are citizens of California, the state where the action was filed. However, the local controversy exception only applies if: (1) at least two-thirds of the putative class members are citizens of the state where the action was filed; (2) at least one defendant is a citizen of the state in which the action was filed; (3) the alleged principal injuries were incurred in the state in which the action was originally filed; and (4) no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons. 28 U.S.C. § 1332(d)(4). "The local controversy exception to CAFA jurisdiction is a narrow exception," and once CAFA removal jurisdiction has been established, the party seeking remand bears the burden of establishing that it applies. *Allen v. Boeing Co.*, 821 F.3d 1111, 1116 (9th Cir. 2016). In this case, Plaintiff has failed to address any of the factors necessary to remand this action pursuant to the local controversy exception, and, thus, Plaintiff has failed to demonstrate that remand pursuant to the local controversy exception is appropriate.

[3] Because the Court concludes that Defendant has demonstrated that the amount in controversy is in excess of $5,000,000 and this Court has jurisdiction pursuant to CAFA, the Court need not determine if the amount in controversy exceeds $75,000 on Plaintiff's individual claims or if diversity jurisdiction exists.

one required meal break on at least one of their shifts each week. In addition, Defendants estimated that the amount in controversy for Plaintiff's rest break claim was $10,934,459.80, based on Defendants' assumptions that each class member failed to receive at least one required rest break on at least one of their shifts each week. Because Defendants' estimated amount in controversy was well in excess of $5,000,000 based on Plaintiff's first three causes of action, Defendants did not estimate the amount in controversy with respect to Plaintiff's fourth, fifth, sixth, seventh, eighth, ninth, and tenth causes of action.[4]

In his Motion, Plaintiff argues that Defendants had calculated the number of class members in such a way that employees or former employees who had worked for Defendants for more than one year of the class period were counted more than once, possibly up to four times. Plaintiff also argues that Defendants' calculation of the amount in controversy is unreasonable because Defendants' assumptions as to the number of violations were speculative. However, Plaintiff did not produce any evidence or make any argument that the amount in controversy was less than $5,000,000. Instead, Plaintiff merely argues that Defendants have failed to satisfy their burden to demonstrate that the amount in controversy exceeds $5,000,000.

In their Opposition, Defendants admit that they had inadvertently miscounted the number of class members and conclude based on their review of time and payroll records that the correct number of putative class members was 1,681. Defendants then re-calculate the amount in controversy using the new, smaller number of putative class members. In addition, Defendants make those revised calculations using more conservative estimates of the number of potential violations. Based on the revised number of putative class members, more conservative estimates of the number of potential violations, and considering most of Plaintiffs' claims, Defendants estimate the amount in controversy as $59,372,060.19, including $5,834,385.91 in unpaid overtime, $660,738.96 in unpaid minimum wages, $15,479,730 in unpaid minimum wage penalties, $660,738.96 in unpaid minimum wage liquidated damages, $7,046,359.80 in missed meal breaks, $7,046,359.80 in missed rest breaks, $5,669,168.40 in waiting time penalties, $5,195,000 in late payments, $2,597,500 for inaccurate wage statements, and $9,182,078.36 in attorneys' fees.[5] Moreover, Defendants argue that the putative class is so large, that even a conservative estimate of only one of Plaintiff's claims is sufficient to satisfy the $5,000,000 amount in controversy requirement. Specifically, Defendants argue that, with respect to Plaintiff's claim for unpaid overtime, an assumption of only one hour of unpaid overtime per week for each putative class member at the average hourly rate of $27.77 in the sixty-nine percent of workweeks that class members had worked at least forty hours resulted in an amount in controversy of $5,834,385.91, which is over the $5,000,000 minimum required.[6]

### 2. The Declaration of Jesse Matthews

---

[4] Defendants also estimated that approximately $2,733,614.94 in attorneys' fees would be added to the amount in controversy.

[5] This estimate does not include any amounts related to Plaintiff's claims for recordkeeping violations and unreimbursed business expenses.

[6] Defendants argue that this was a conservative estimate of unpaid overtime because it did not account for the fact that some of the allegedly unpaid overtime occurred in weeks with fewer than forty hours worked, but that included workdays with eight or more hours worked.

Defendants submitted. the Declaration of Jesse Matthews ("Matthews"), a Senior Human Resources Generalist for Defendants, in support of their Opposition. In his Declaration, Matthews states that he reviewed records compiled, maintained, and relied upon in the ordinary course of business by Defendants, including payroll records and timekeeping records. Matthews also calculated the corrected number of putative class members, the number of pay periods during the during the class period, the average hourly rate of a class member. With respect to Plaintiff, Matthews calculated the number of weeks he worked for Defendants, the average number of shifts he worked per week, and the average number of hours he worked per week.[7] Matthews also states that:

> Based on my experience with the putative class and my review of Plaintiff's Complaint in which he claims the putative class members are similarly situated to him and in which he does not identify any differences between them, I believe it is reasonable to extrapolate Plaintiff's experience to the putative class members.

Plaintiff argues that Matthews's Declaration is insufficient to establish the amount in controversy because it lacks foundation and corroborating documents, such as payroll records for any putative class members other than Plaintiff. However, many district courts in the Ninth Circuit have held that such declarations can be sufficient evidence in light of allegations made in complaints. *See Sanchez v. Abbott Laboratories*, 2021 WL 2679057 (E.D. Cal. June 30, 2021); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186 (E.D. Cal. 2020) (holding that there is no "bright-line rule" establishing whether a declaration, without foundation and corroborating documents, is per se insufficient); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *2-9 (S.D. Cal. Nov. 1, 2019) (finding that declarations of the director of human resources, along with allegations in the complaint, sufficiently demonstrate the amount in controversy exceeds $5 million); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (holding "that the evidence Defendant provides through [its Lead Human Resources Business Partner's] declaration is acceptable for purposes of determining the CAFA amount in controversy."); *Moore v. Addus HealthCare, Inc.*, 2019 WL 3686584, at *3 (N.D. Cal. Aug. 7, 2019) (finding that a declaration from a human resources manager executive "who attests to basic facts based on her normal business responsibilities and her personal review of Defendants' business records" is sufficient); *see also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010) (vacating district court's remand order and holding that the defendant's declaration alone had sufficiently shown by a preponderance of the evidence that the amount in controversy exceeded $5,000,000 when the plaintiff produced no evidence to the contrary and the complaint supported such an assumption).

Accordingly, the Court finds that Matthews's Declaration is sufficient to support Defendants' estimate of the amount in controversy in light of the allegations in the Complaint.

### 3.     Defendants' Assumptions Regarding the Violation Rate

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the [$5 million] amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, 2019 WL

---

[7] Matthews also attached Plaintiff's wage statements to his Declaration.

4254935, at *2 (C.D. Cal. Sept. 5, 2019). As a result, determining whether the amount in controversy exceeds $5,000,000 is contingent on whether Defendants' assumptions regarding violation rates are reasonable.[8] *See Ibarra*, 775 F.3d at 1197 (finding assumptions regarding damages "cannot be pulled from thin air but need some reasonable ground underlying them"). "Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Dobbs v. Wood Group PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (*citing Ibarra*, 775 F.3d at 1199). However, a defendant "is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, *4 (C.D. Cal. Oct. 1, 2019) (*quoting Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)).

"Generally, the spectrum of similar cases has two end-points: the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Id.* (*citing LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1202 (9th Cir. 2015)). For example, it may be reasonable to assume a one hundred percent violation rate if the "complaint specifically alleges a 'uniform' practice" and the plaintiff offers no competent evidence in rebuttal to a defendant's showing. *Id.* However, courts in the Ninth Circuit have found a general allegation of a uniform policy and systematic scheme of wage abuse does not always support a one hundred percent violation rate. *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) (finding that the defendant's inference of 100% violation rate based on a "uniform policy" reasonable in light of the plaintiff's failure to rebut the defendant's evidence supporting such rates.); *but see Vilitchai v. Ametek Programmable Power, Inc.*, 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017) (finding "[a]lthough Plaintiff alleges Defendants had a 'uniform policy and systematic scheme of wage abuse,' such allegations do not support a 100% violation rate") (citations omitted); *Beck v. Saint-Gobain Containers*, 2016 WL 4769716, at *9 (C.D. Cal. Sept. 12, 2016) (finding that the defendant impermissibly assumed a one hundred percent violation rate where the plaintiff asserted in his general allegations that the defendant "engaged in a uniform policy and systematic scheme of wage abuse"). In addition, although a one hundred percent violation rate has been considered unreasonable when a complaint alleges a "pattern and practice" of violations (*Ibarra*, 775 F.3d at 1199), courts in the Ninth Circuit have frequently held a violation rate between twenty and sixty percent to be reasonable when the plaintiff claims a "pattern and practice" of violations.

---

[8] As the Court in *Toribio* found, this determination is "a wasteful and silly, but routine, exercise in mathematical fantasyland." *Toribio*, 2019 WL 4254935, at *3. The Court also agrees with the observation in *Toribio* that:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

*Id.*

*See, e.g., Hender v. American Directions Workforce LLC*, 2020 WL 5959908, *8 (E.D. Cal. Oct. 8, 2020) (finding a twenty percent violation rate reasonable when a plaintiff "claims a 'policy and practice' of denying employees meal and rest breaks"); *Olson v. Becton, Dickinson & Co.*, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding a twenty-five percent violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (using a fifty percent violation rate for meal period claim and thirty violation rate for rest period claim); *Bryant*, 284 F. Supp. 3d at 1151 (using a sixty violation rate for meal period claim and thirty violation rate for rest period claim); *Alvarez*, 2017 WL 5952181, at *3 (using a sixty percent violation rate for meal period claim).

In this case, Plaintiff alleges in his Complaint that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." Complaint, ¶ 26. Plaintiff also alleges that Defendants "intentionally and willfully failed to pay overtime wages," "intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and other class members" for working during their meal breaks, and "willfully required Plaintiff and other class members to work during rest periods and failed to pay Plaintiff and other class members" for working during their rest breaks. Complaint, ¶¶ 54, 64, and 73. Because Plaintiff alleges a pattern and practice of meal and rest break violations, the Court concludes that Defendants' assumption of a twenty-five percent violation rate for meal and rest breaks is reasonable. Assuming a twenty-five percent violation rate and using the average hourly pay rate of $27.77, Defendants calculated that the amount in controversy for meal breaks would be $7,046,359.80 (1,014,960 shifts of six hours or more x 25% x $27.77). Similarly, Defendants calculated the amount in controversy for rest breaks as $7,046,359.80 (1,014,960 shifts of four hours or more x 25% x $27.77). Thus, the conservative estimate of the amount in controversy for either meal or rest breaks alone is sufficient to satisfy the $5,000,000 amount in controversy, without considering Plaintiff's other claims or attorneys' fees.

Given the size of the alleged class, the number of claims alleged in the Complaint, and the potential for attorneys' fees, and Defendants' estimates of the amount in controversy with respect to Plaintiff's various claims, the Court concludes that Defendants have satisfied the amount in controversy requirement. See *Sanchez*, 2021 WL 2679057, at *6 (denying motion for remand and finding a sixty percent violation rate for meal period violations and a thirty percent rate for rest period violations to be reasonable); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (stating that attorneys' fees must be included in the assessment of the amount in controversy).

IV.     **Conclusion**

For all the foregoing reasons, Plaintiff's Motion is **DENIED**.

IT IS SO ORDERED.